### * B. F. ATKINSON v. F. C. BADEN ET AL.

CONSTRUCTION OF A RESERVATION IN A DEED AFFECTING LANDS NOT CONVEYED.

A reservation or exception in a deed-poll, by the grantor, of an estate in lands of the grantee other than those conveyed by such deed, cannot operate as a reservation or exception strictly, but will operate as an implied grant of such estate from the grantee to the grantor, when it clearly appears from the terms of the deed, and the acceptance thereof, that the parties so intended.

Where the owners of three undivided fourths of a tract of land conveyed to the owner of the other undivided fourth, their interest in the entire tract, described by metes and bounds as containing four hundred (400) acres, without specifying what that interest was, and without naming any particular estate as being conveyed; reserving and excepting the full, sole, and whole privilege of prospecting and boring for petroleum or rock oil, from and out of said lands or any part thereof; with the full right of ingress and egress upon said lands or any part thereof, for the purpose aforesaid, and for all the roads and rights-of-way that are necessary and proper for carrying on the business of procuring oil and transporting the same to market; the right to take timber and coal from said land or any part thereof, and the necessary land for derricks, wells, sheds, shafts, buildings, machinery, etc., and to remove such structures at pleasure; and providing that all the oils procured from said lands belong exclusively to said grantors; *habendum*, to have and hold said described 400 acres of land, subject to the reservations as above set forth, and such deed was accepted by the grantee, the intention to grant sufficiently appears to vest in the grantors the sole right to procure and remove the oil, in the manner specified in the deed, from said entire premises.

APPEAL from the Court of Common Pleas of Noble county.

The petition sets forth that on the 6th day of January, 1886, Stuart Gordon was the owner in fee of the legal title of the one undivided fourth part of certain premises, situate in said county, and described by metes and bounds, containing 400 acres; that at the same time John Burgess, Wm. Thompson and Joseph Myers were jointly the owners in fee of the undivided three-fourths of said lands, and were tenants in common with Gordon; that on said day said Burgess, Thompson and Myers, in consideration of $6,000 paid them by Gordon, executed a conveyance of their interest in said lands, describing the same by metes and bounds, to Gordon. Said deed, so far as it is necessary to an understanding of the case, was in these words: "This indenture, made this, etc., between B., T. and M., parties of the first part, and G., party of the second part, witnesseth, that said parties of the first part, in consideration, etc., have granted, bargained, sold, etc., and by these presents do grant, bargain, sell, etc., unto the party of the second part, etc., "all their right, title and claim, with the exceptions and reservations hereinafter mentioned, of, in and to all the following described premises," a description by metes and bounds of the 400 acres following, reserving and excepting nevertheless, to said B., T. and M., etc., "the full, sole, and whole privilege of prospecting for, or otherwise procuring petroleum or rock oil, from or out of said lands or any part thereof, without any hindrance on the part of said G., his heirs or assigns; also a full and complete right of ingress and egress upon and over said lands or any part thereof, for the purpose aforesaid, and all the necessary roads and rights-of-way, necessary and proper for carrying on the business of procuring said oil and transporting the same to market; also the right to enter upon any part of said land and procure therefrom the necessary timber for derricks, sheds, etc., used in connection with said business, and also to procure therefrom all the necessary coal in prospecting, boring for and procuring oil from said lands or

* This case was dismissed by agreement. Entry January 8, 1889.

any part thereof, and further reserving and excepting such portions of said lands as may be necessary to occupy with derricks, wells, shafts, buildings, or sheds. in carrying on said business of boring, prospecting and procuring oil upon or out of said lands, and with the free privilege of removing, at any time, such buildings, machinery, etc.; and furthermore, it is understood that all oils procured from said lands belong exclusively to the parties of the first part * * * to have and to hold the said described four hundred acres of land, subject to all the reservations as above set forth." Said deed was executed by said grantors, but was not executed by G., and was not intended to be. G., at the time, was in possession of said lands and so remained, until he conveyed to others, who conveyed to plaintiff, who took and retains possession. That B., T. and M. conveyed to the Bradford Oil Co., which conveyed to Baden & Aiken, who have only such interest as B., T. and M. had by virtue of said deed. That B. & A. have taken possession of plaintiff's lands, and are boring and prospecting for oil, and have procured and are procuring oil in large quantities, and claim and assert that they have the sole and exclusive interest and estate in the whole of the oil in said lands, and the sole right to obtain the same, and that said claim is made solely by virtue of the reservations in said deed; but plaintiff claims he is the owner of the one undivided fourth in the oil in said lands, as tenant in common, etc. Further facts appear in the opinion.

LAUBIE, J.                                                                              .

In the court below, this case was heard on a demurrer to the petition, which was sustained and the petition dismissed; and from such judgment plaintiff appeals; so that the question is presented to us as it was in the court below, whether or not the demurrer was well taken to the petition. The plaintiff states in the petition, that in 1866, one Stewart Gordon was the owner in fee of the one undivided fourth of the lands described in the petition; that Burgess, Myers and Thompson, were the owners of the other three undivided fourths; that Burgess, Myers and Thompson conveyed to Gordon their undivided three-fourths interest in this land, reserving and excepting therefrom certain oil privileges (petroleum or rock oil) in the lands conveyed; that subsequently thereto, Gordon conveyed certain portions of the land to the plaintiff; that Burgess, Myers and Thompson conveyed their rights, reserved to themselves in the deed, to the defendants; that these defendants have entered into possession of the lands conveyed to the plaintiff by Gordon; have bored wells thereon, and are taking out (at the time of the filing of the petition), large quantities of petroleum or rock oil. That the defendants claim to be the owners of the sole right to take this oil, and to the oil when severed from the land, and deny that the plaintiff has any rights therein; and they claim this right under and by virtue, only and solely, of the reservation specified in the deed of Burgess, Myers and Thompson to Gordon. Plaintiff claims that he is the owner, by virtue of the conveyance from Gordon to himself of these lands, of the undivided one-fourth interest in this oil, and seeks generally to have an account from the defendants as to the amount of oil taken out at the time of filing the petition; that his and their rights be determined, and that the cloud upon his title to the undivided one-fourth interest in the oil in this land be cleared.

This brings us to the question as to the construction to be given to the reservations and exceptions contained in the deed :—1st, as to what was the intention of the parties in these reservations and exceptions; 2nd, when ascertained, what is their legal effect.

· First, then, what did these parties intend by the reservations and exceptions in this deed?

It is claimed upon the part of the plaintiff, that the intention was to reserve and except to the grantors, Burgess, Myers and Thompson, no greater interest than they were then lawfully possessed of; while upon the part of the defend-

ants it is claimed, that the parties intended to reserve a larger right to the oil than the grantors lawfully owned at the time of the execution of this deed.

*In what manner* the deed is to operate, is to be determined from the deed itself. *On what* it is to operate may be gathered from the whole body of the evidence, whether it be in the deed or in the facts connected therewith, and surrounding the parties at the time.

In the construction of a contract, a deed, or instrument of writing, the court may be put into possession of the facts and circumstances connected with the subject-matter and known to the parties at the time, for the purpose of enabling the court to correctly interpret it and correctly arrive at what was the intention of the parties. As respects the reservations and exceptions contained in this deed, was it the intention to reserve to the grantors a larger right than they then owned ? Being heard upon demurrer, the court has possession of none of the facts or circumstances surrounding the parties, or connected with the subject-matter of the deed, save as they are detailed in the petition ; and so far as the plaintiff regarded them to be important, he has included them in the allegations of his petition. I have already substantially referred to the material parts; that is, that Gordon was the owner of one undivided fourth of this land, and that Burgess, Myers and Thompson were the owners of three undivided fourths, and that Burgess, Myers and Thompson thereupon undertook to convey and did convey to Gordon, their tenant in common, their undivided interest, reserving in the deed rights to which I have referred. The deed expresses to be one of bargain and sale, and to have a consideration in money of six thousand dollars ; and by its terms the grantors transfer to Gordon all their interest in the land save what is reserved, it being what may be termed a special quit-claim deed. They do not undertake to convey to him any indefeasible estate, or any particular estate. It is not specified in the deed that they are conveying an undivided interest. They quit-claim to him all their right, title and interest of and in the body of the lands, whatever that title, right and interest may be.

In determining whether or not parties, in a case like this, are reserving to themselves a greater right than they lawfully own or possess in the lands, it is necessary that it should clearly appear that such is the intention ; because, although this is said to be an indenture, it is, in force and legal effect, a deed-poll. It is executed by the grantors only, and is designed and intended to be executed by them alone.

A deed-poll, it is hardly necessary to say, is the deed of the grantor only, and by which the grantor undertakes to convey to the grantee certain rights and interests of his own ; and the thing intended, ordinarily, in a conveyance, by way of reservation and exception, is something that would otherwise pass to the grantee. Does it clearly appear that the reservations in this deed are reservations of greater rights in the premises than the grantors, at the time of the execution of the deed, themselves possessed ?

The deed itself, after naming the parties, provides that the parties of the first part do grant, bargain, sell, alien and release, to said party of the second part, "all their right, title and claim, with the exceptions and reservations hereinafter mentioned, of and to the following described premises." It then describes the entire body of land—the 400 acres—by metes and bounds.

It proceeds, "reserving and excepting, nevertheless, to the said Burgess, Myers and Thompson, the full, sole and whole privilege of prospecting for and mining petroleum or rock oil, from and out of said land, or any part thereof," which, here, seems to mean simply a reservation out of their own title and land.

But it will be remembered that they have not undertaken by this deed, to convey any particular estate, as for instance their undivided three-fourths interest, but all their right, title and claim to the lands described as four hundred acres, whatever that title or claim may be ; and they especially provide that "they shall and do retain the full, sole, and whole privilege of prospecting, and boring

for petroleum and rock oil, from and out of said land or any part thereof;" reserving here a right in the whole land or any part thereof; to have the sole and whole privilege of thus prospecting and boring for oil, and this to be without hindrance on the part of Gordon, his heirs or assigns.

The grantors also reserve full right of going upon or over said land, or any part thereof, for the purposes aforesaid, and all the rights that are necessary and proper for carrying on the business of procuring said oil and transporting the same to market. They also provide for the right to enter upon the land or any part thereof to take timber for such purposes, and for the right of taking the necessary quantity of land for the erection of their derricks, sidings, shafts, and machinery, with the provision that they may remove the same at any time. They further provide, "and it is further understood that all the oil procured from said lands belongs exclusively to the parties of the first part." In the *habendum* clause, it is provided that the party of the second part is to have and to hold the said described four hundred acres of land, subject to the reservation as above set forth. It would seem from these provisions, that the parties were not contracting in regard to just what the grantors then owned.

As I have said, the grantors do not undertake to convey any particular estate. They are conveying only what right and title they may have to four hundred acres of land. What that right is, or what that claim, whether it be of the whole, or whether it be of any undivided part, is not mentioned specially. It is to be inferred that they were making a claim to the whole land, as there is no paticular estate designated. It may be a claim to the whole, or it may be a claim to a small part.

Outside of the deed, for the purpose of enabling the court properly to interpret it, plaintiff alleges that the title and right was to the undivided three-fourths interest; but they have not specified it in the deed. They are conveying an indeterminate interest, which may be one thing or another. When they come to the reservation, they reserve as to the whole land; the oil in the whole four hundred acres. This is definite and specific, so that, if we look to the deed alone, it may be seen that they are reserving a definite interest, and one which may be, and in fact is, much larger and greater than their real interest. They reserve all of the oil in the whole of the land. This deed is nothing more nor less than a contract, and is to be interpreted as any other contract. We are to arrive at the intention of the parties, in making these provisions, the same as we would arrive at it in any other contract. The rule of intrepretation is the same.

Gordon must have known, when he accepted this deed, that the grantors were reserving to themselves all the oil under the whole four hundred acres, and it must have been, therefore, his intention as well as that of the grantors that it should have this force and meaning. We think this a very fair deduction from the facts and the contract as set out. But at all events he is chargeable with such knowledge.

Now, upon the second question, what is to be the legal effect of such a reservation, reserving to the grantors a larger interest in the lands than they owned at the time of making this deed? Can it have the legal effect of passing to them an interest which they did not own at the time, but which belonged to the grantee? The plaintiff claims that it cannot have such legal effect; that notwithstanding such may have been the intention, it cannot have the legal effect of reserving to them any interest in the lands of the grantee; that it can operate only as a reservation or an exception. Undoubtedly, a reservation or an exception must be out of the thing granted, and as a reservation or an exception merely, it could operate upon, and grow out of nothing but the estate owned and conveyed by the grantors.

But may not these provisions of the deed, although in the form of reservations and exceptions, operate as an implied grant on the part of the grantee of an interest in his estate?

Three cases (and we find no other directly in point) are relied upon by counsel on each side on this proposition, and they are all Massachusetts cases.

In the case of Adams v. Iron Co., 7 Cushing, 361, the bill sets out, that upon the 21st of December, 1790, Jared Lane was the owner in fee simple of three undivided fourths of lot No. 62, containing 100 acres, and then sold the same to John and Titus Wood and Jonathan Weed, and executed to them a deed thereof in due form of law, excepting, saving, and reserving a full and ample right to all the iron or other ores that may be found on the surface or in the bowels of the earth of said one hundred acres of land, with liberty to pass and repass, cart, and carry away the same.

In that case the deed is of the three undivided fourths in the one hundred acres, and it has a reservation and exception of the full and ample right to the iron and other ore on the surface and in the bowels of the earth, of said one hundred acres. But it is not a conveyance to the party who owned the other undivided fourth of the land, and therefore no grant could be implied from the grantee as to it.

The court, Chief Justice Shaw delivering the opinion, say : '' It is contended on the part of the defendants in the present case, that the relation of tenants in common of these ores does not exist between the parties, because the deed under which the plaintiffs claim, although it conveys three-fourths of the land only, excepts and reserves in terms all the iron and other ore under the whole hundred acres ; and so, if the plaintiffs have any title, they are sole owners. All the conveyance out of which such reservations and exceptions are made, is of the three undivided parts, only, of the soil of the hundred acres. The literal form of the reservation is of the whole ; but perhaps this can hardly be regarded as the true meaning. The form being that of a reservation, the ordinary construction must be, that the reservation must be out of the grant of something which, but for the reservation and exception, must have passed by it, and must, by implication, be so restricted." He proceeds to state that if there had been a severance of the iron from the land, that a different construction might have prevailed.

This is the expression of the opinion of the judge of a court entitled to the highest respect and consideration. But the case did not pass off on that point, but did pass off on an entirely different one; that is, that the grant was void because it was an attempt upon the part of a tenant in common to sever the tenancy, by a deed to a third person of a specified part in the common estate, which could not be done.

The next case that is referred to is Hill v. Cutting, 107 Mass., 596. This case is one of a reservation in a deed from one tenant in common to another. The parties to this were the parties to an amicable partition of an estate between themselves, in which John Hill desired to reserve, for his own use, all the wood, timber and trees on a part of the land, with the right to enter to fell, cut and take away the timber, and to pass over the land of the grantee for that purpose.

The deed had this reservation : " The grantor, John Hill, desires to reserve to himself the wood upon the eight acres described by metes and bounds, etc." being part of the land conveyed to the other tenant in common. They owned, as tenants in common, these premises, and one tenant reserved in his deed the wood in question and standing trees belonging in common to them both. The court say : " The intention of the parties to the deed of May 5, 1865, was that all the wood on the eight acres should pass. The intention there is full and plain. It is a reservation in which he reserves a greater right to the wood than he possessed. A reservation and exception can only be out of the estate of the grantor. This clause, therefore, could not operate by way of reservation or exception upon the undivided half of the eight acres which had never been in the grantor, but which was before the division, and afterwards remained in the grantee. As to the other undivided half, there would seem to be no good reason why that clause should not be allowed to operate as a reservation and exception." That is, as to the half that belonged to the grantor.

Here the court lay down the usual rule as well understood—a reservation must be out of the estate granted. They say that, as to the estate which belonged to the grantee, this reservation and exception could not operate as a reservation and exception, because it is not out of the estate granted; but the court do not decide the case upon that point. They proceed, " but however that may be, it had at least the effect of a parol transfer of all the wood then standing on the premises, as personal property, and a license to enter and cut the same, which was good until revoked, which was assignable without deed, and which after it had been acted upon, and the trees cut down by the licensee or his assignee, could not be countermanded." So there was a judgment for the defendant.

Here again we find the court did not decide the case upon the proposition we are now discussing. They state the facts of this reservation, and they proceed to hold that the formal transfer of the wood standing upon the premises, and the license to enter and take the same, had been performed, and the wood taken; and it having thus been acted upon, and carried out by the grantor, or his assignee, could not be countermanded. In other words, it was a license executed. We do not intend to apply the principles of this case to the case at bar, to the extent of regarding these reservations as a license; because a license to do anything, as generally understood, may be revoked at any time, of course with the qualification I have just given. We infer from the allegations of the petition, that if this was a license, it was revoked long before it was attempted to be enforced by the licensee, because a sale and conveyance by the owner of the land operates as a revocation of such license, where nothing has been done under it, and no outlay is made, or action taken by the parties to it.

The other case is that of Dyer v. Sanford, 9 Metcalf, 395.

Tilden and Davis owned lands adjoining each other. Tilden had a house upon his premises within a few feet of the line, and he conveyed a narrow strip between the house and the line of Davis to the latter, and the reservation is of this character: "Reserving, however, in the dwelling house of said deceased, Christopher Tilden, the right of eavesdrops where it bounds on said lot, and also the right of forever keeping open the great staircase window at the back of said house, bounding on said lot." It was in evidence, that the window thus mentioned, was in the back part of the house of said Tilden, and twenty-five inches distant from the line of the estate of said Davis, as it stood before the conveyance. The conveyance included this strip, twenty-five inches wide.

The reservation was of the right to forever keep open the great staircase window at the back of said house, bounding on said lot. The court, in referring to this, said : " It is well established, by the facts in this case, that at the time of the conveyance from Tilden to Davis, Tilden's was a modern house, and had acquired no right of light and air for the staircase window over Davis's land. Davis then had a right to build a wall quite on the extremity of his southern line. Was Davis's right to build on his own land diminished by his acceptance of this deed? We think not." They say : " A case was cited from New York, by the plaintiff's counsel, to show that a reservation may be made of something not coming out of the estate granted. Case v. Haight, 3 Wend., 655. We have no doubt, that by apt words, even in a deed poll, a grantor may acquire some right in the estate of the grantee. It is not, however, strictly by way of reservation, but by way of condition or implied covenant," (or, as it is better expressed elsewhere in the opinion, by way of implied grant): " It is not, however, strictly by way of reservation, but by way of condition or implied covenant, even though the term ' reserving ' or ' reservation ' is used."

That is, if the parties intended to reserve to the grantors a right and interest in the estate of the grantee, even in a deed poll, it might operate as an implied grant.

The court proceeds to put some cases : " If a grant is made to A., reserving the performance of a duty, to-wit, the payment of a sum of money, to a third

20    C C    1

person, for the benefit of the grantor, an acceptance of the grant binds A. to the payment of the money."

"So, where a demise is made to A., reserving a rent in money, or in service, it is not strictly a reservation out of the demised premises; but the acceptance of it raises an implied promise to pay the money. So we think a grant may be so made as to create a right in the grantee's land in favor of the grantor. For instance, suppose A. has close No. 2 lying between two closes, Nos. 1 and 3, of B.; and A. grants to B. the right to lay and maintain a drain from close No. 1, across his close No. 2, thence to be continued through his own close, No. 3., to its outlet; and A., in his grant to B., should reserve the right to enter his drain, for the benefit of his intermediate close, with the right and privilege of having the waste water therefrom pass off quickly through the grantee's close, No. 3, forever. In effect, this, if accepted, would secure to the grantor a right in the grantee's land; but we think it would enure by way of implied grant, or covenant, and not strictly as a reservation. It results from the plain terms of the contract."

It is said that in the case thus put, an easement only was created. But if so, it does not affect the principle. It is the creation of a right in the land. It is a reservation by the grantor of that which he did not lawfully own or possess at the time of the execution of the grant; and it is reserving to himself an interest in the lands of the grantee. The court proceeds in regard to the case before them. "But there is nothing in the terms of the reservation, in the deed of Tilden to Davis, which imports or implies any larger claim for air and light to this window than the owner lawfully had before."

In this deed, the court, it is observed, holds that there was no intention to reserve to Tilden any greater right to light and air than he lawfully possessed at the time of the execution of the deed; so there was no ground for the application of the doctrine of an implied grant.

The court proceeds: "It is a simple reservation or exception, from the operation of the grant, of a right already existing, and nothing more; and that, too, in a deed by an administrator, executing a power over the estate of the intestate, and not acting, or professing to act, for the heirs. Besides, the right reserved is to keep open the staircase window. It is not even said for air and light; and that it was so intended, results only from reasonable implication. As the direct and ordinary purpose of a deed poll is to transfer the right of the grantor to the grantee, a grant, covenant, or promise, by the grantee to the grantor, is not to be implied, except from such plain and express terms, as will show that such was the intent of the grantee, manifested by his acceptance of the deed."

I think that the case at bar comes squarely within the exception here enunciated. The parties did intend to reserve to the grantors a larger right than they owned at the time of the execution of the deed, intended to reserve a right in the land of the grantee, and the grantee having accepted such deed, the reservation operates as an implied grant from him to the grantors.

The rule is, that where a grantee accepts a conveyance, he is bound by all its provisions, and the legal effect of such provisions, and cannot gainsay them. He is estopped to deny the provisions contained in the deed, and their effect.

When we find what the provisions of this deed are, and what the effect of these provisions, we have arrived at the same conclusion that the court was announcing in the case just quoted from: that there is an implied grant which grows out of the reservations contained in the deed. These provisions can have no effect otherwise. The intention of the parties would be defeated otherwise. We therefore think, that the demurrer to this petition should be sustained, and the petition dismissed.

It is hardly necessary to refer to the claim, which was alluded to by counsel, that the plaintiff stands in a better condition in regard to these premises, or the oil, than Gordon. He took his title from Gordon; and in order to ascertain whether Gordon had any title, we must look to this deed.

Vol. I.                          CIRCUIT COURTS.                          **307**

He is bound by its provisions, and this implied grant passes as a muniment of title, and parties and privies are bound by it.

Wm. Chambers, and Nye & Oldham, for plaintiff.

D. S. Spriggs and F. L. Blackmarr, for defendants.'